**UNITED STATES of America ex rel. Lyman A. MOORE, Petitioner-Appellant,**

v.

**David H. BRIERTON, Warden of Stateville Correctional Center, Illinois Department of Corrections, Joliet, Illinois, Respondent-Appellee.**

No. 76–2071.

United States Court of Appeals, Seventh Circuit.

Argued April 27, 1977.

Decided Aug. 12, 1977.

James J. Doherty, Chicago, Ill., for petitioner-appellant.

Thomas J. Immel, Asst. Atty. Gen., Springfield, Ill., William J. Scott, Atty. Gen., Chicago, Ill., for respondent-appellee.

Before PELL, Circuit Judge, WOOD, Circuit Judge, and GORDON, District Judge.*

MYRON L. GORDON, District Judge.

The petitioner-appellant Lyman Moore has appealed the district court's ruling dated July 26, 1976, denying his petition for a writ of habeas corpus. In this case, we are called upon to apply the United States Supreme Court's decision in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), which delineates a prosecutor's obligation to provide a defendant with exculpatory materials. For the reasons stated below, we affirm the ruling of the district court.

On April 25, 1962, around 11 P. M., Bernard Zitek was murdered in the bar-restaurant which he operated in Lansing, Illinois. The murderer was an individual who returned to the bar about an hour after Zitek had ejected him and a companion because of their profanity. In 1964, the petitioner was convicted in state court after a jury trial of the first-degree murder of Zitek. He was sentenced to death.

Moore's first petition for post-conviction relief was denied by the state trial court. That denial and also the petitioner's conviction and sentence were affirmed on appeal by the Supreme Court of Illinois. 42 Ill.2d 73, 246 N.E.2d 299 (1969). The United States Supreme Court affirmed the conviction but reversed the judgment as to the death sentence imposed and remanded the case. *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), reh. den. 409 U.S. 897, 93 S.Ct. 87, 34 L.Ed.2d 155. On remand, the state trial court then sentenced the petitioner to the term of 60 to 100 years' imprisonment, which he is presently serving.

After his resentencing, the petitioner filed a second post-conviction petition in the state trial court, and the denial of that application was affirmed on appeal. 60 Ill.2d 379, 327 N.E.2d 324 (1975). Rehearing was denied on March 24, 1975. The United States Supreme Court denied certiorari, *Moore v. Illinois,* 423 U.S. 938, 96 S.Ct. 298, 46 L.Ed.2d 270 (1975); however, Mr. Justice Stewart stated in part:

"I do not quarrel with today's denial of Moore's petition for certiorari, for we cannot from this vantage point intelligently reassess the state courts' determination of questions of credibility. I write only to point out that those questions will be fully amenable to reassessment in a federal habeas corpus proceeding. See *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770." 423 U.S. 938, 96 S.Ct. 298, 46 L.Ed.2d 270 (1975).

Moore did file a petition for a writ of habeas corpus in the federal district court. This petition was denied, *United States ex rel. Moore v. Brierton,* 76–C–345 (N.D.Ill., July 26, 1976), and a petition for rehearing was denied on September 16, 1976. Moore has now appealed to this court.

The substance of the testimony at trial has been set forth at length in *Moore v.*

---

* District Judge Myron L. Gordon of the Eastern District of Wisconsin is sitting by designation.

*Illinois,* 408 U.S. at 788–791, 92 S.Ct. 2562, and summarized in the district court decision. We highlight that testimony here.

At trial, Patricia Hill, a waitress in the bar where the murder occurred, identified the petitioner as the ejected patron who returned and shot Bernard Zitek. Henley Powell, who was playing cards in the bar at the time of the murder, also positively identified Moore as the murderer. Powell pursued the person who killed Zitek, but he abandoned the chase when threatened by the killer.

Donald O'Brien, another cardplayer, testified that Moore was not the individual ejected from the bar at 10 P. M. on the evening of the murder. The district court made no mention of this testimony. Previously, the United States Supreme Court had noted other testimony to the effect that O'Brien was drunk at the time.

Virgil Sanders testified that two days after the murder, on April 27, 1962, he was in a nearby tavern known as the Ponderosa Tap. At that time, another patron, who Sanders called "Slick," said to Sanders that it was "open season on bartenders" and that he [Slick] had shot one in Lansing. At the trial, Sanders testified that Moore was the man he knew as "Slick".

William Joyce, the Ponderosa Tap's bartender, testified that he arranged to have Bob Fair give Moore and a companion, who were both in the Ponderosa Tap on April 27, 1962, a ride to Harvey, Illinois. Bob Fair, owner of the Ponderosa Tap, testified that he provided Moore and the companion such transportation and that on the way, one of his passengers said something to this effect: "Well, if we hadn't had that trouble with the bartender in Lansing, we'd have been alright."

Moore presented an alibi which relied in part on testimony by the bartender and the general manager of the Westmoreland Country Club. Their testimony and certain employment records suggested that the petitioner had been working at the country club at the time of the murder on April 25, 1962, and also at the time of the conversation and subsequent events relating to the Ponderosa Tap on April 27, 1962. At least one of the witnesses, however, was not certain that he had seen Moore at work on the pertinent dates and times.

Moore's appeal focuses on five items of evidence characterized as exculpatory, which were not provided to him at the time of the trial:

(1) A statement given by Virgil Sanders to the police on April 30, 1962. At that time, Sanders indicated that he had met the person he knew as "Slick" six months before in Wanda and Del's bar. Moore was in the federal penitentiary at Leavenworth six months before the murder had occurred. With the suppressed statement, it could be demonstrated that Sanders could not have been conversing with Moore at the Ponderosa Tap two days after the murder.

(2) The police raided Wanda and Del's tavern on April 30, 1962, in a search for "Slick". Although Delbert Jones, the tavern operator, then told police that he could identify "Slick", after Moore's arrest, the police never asked Jones whether Moore was "Slick".

(3) Following the raid on Wanda and Del's, the police obtained a picture of one James E. "Slick" Watts, and one officer searched unsuccessfully for him.

(4) William Thompson, a patron of Wanda and Del's tavern, was shown a picture of Moore following the latter's arrest. Thompson indicated to police that the photo of Moore did not look like "Slick," but that a picture he was shown of Watts did resemble "Slick".

(5) When Sanders saw Moore at trial for the first time since the alleged conversation at the Ponderosa Tap, he commented that the "Slick" he knew was thirty to forty pounds heavier than Moore. One of the police officers accompanying Sanders said, "Well, you know how those jailhouse beans are."

Moore contends that none of these items was provided to him until after his trial and that some were suppressed until the first post-conviction hearing.

Applying the standards set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court affirmed the denial of the petitioner's first post-conviction petition. The Court concluded that the information in item (1) simply indicated that Sanders mistakenly identified Moore as the person he had met six months earlier at Wanda and Del's. *Moore v. Illinois*, 408 U.S. 795, 92 S.Ct. 2562. The Court regarded the other four items as similarly tangential, since they merely confirmed that the person making the statement at the Ponderosa Tap and the person known to frequenters of Wanda and Del's as "Slick" were not one and the same.

Emphasizing the considerable testimony identifying Moore as both the individual at the Ponderosa Tap and the person who shot the bartender, the Court found that the prosecution's failure to provide the five items was not material to the question of Moore's guilt and, accordingly, that the suppression did not require reversal of his conviction. 408 U.S. at 798, 92 S.Ct. 2562.

At the second post-conviction hearing, following the decision by the United States Supreme Court, the petitioner produced a statement by Sanders. The statement indicated not that Sanders had made a mistaken identification about the person he met at Wanda and Del's, but rather that the individual he met at Wanda and Del's was the same person he talked to at the Ponderosa Tap, namely "Slick". Moreover, Sanders testified at this hearing that the "Slick" he knew was at least three or four inches taller than Moore. Both the trial court and the Supreme Court of Illinois denied relief. The latter court found Sanders' testimony lacking "that quantum of credibility which would permit this court to consider" granting relief. 60 Ill.2d 379, 386, 327 N.E.2d 324, 328 (1975).

In a petition for rehearing before the Supreme Court of Illinois, the petitioner presented evidentiary materials verifying the height of James E. "Slick" Watts. On March 24, 1975, the petition for rehearing was also denied. The Supreme Court then denied certiorari, and Mr. Justice Stewart issued the separate statement, referred to above, regarding the reassessment of matters of credibility in a habeas corpus proceeding. 423 U.S. 938, 96 S.Ct. 298, 46 L.Ed.2d 270.

The district court applied the reasonable doubt standard set forth in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), to the petitioner's claim of suppressed evidence. The court determined that since the petitioner had made no specific request at trial for the statements of Virgil Sanders, the prosecutor's failure to turn over the five items constituted a denial of due process only if, on a consideration of the entire record, the omitted evidence created a reasonable doubt of Moore's guilt. The court found that no such constitutional violation had occurred. Since in its view Sanders would not be called as a witness at a new trial, the district court found it unnecessary to resolve the issue of Sanders' credibility.

The petitioner's claim of unconstitutionally restrictive cross-examination at trial was resolved adversely to him by the district court. Although the respondent devotes a considerable portion of his brief to this issue. Moore has concentrated his constitutional attack on the issue of suppressed material and has raised the cross-examination issue only in that context. Accordingly, we do not devote separate consideration to the matter of cross-examination.

The respondent's brief further suggests that the petitioner has in this court raised the issue of the constitutionality of certain line-ups in which Moore was a participant. Because that issue was not presented to the district court, we decline to consider it here, even if the petitioner's brief may be read to raise it as a matter separate and apart from the *Agurs* issue. *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1333 (7th Cir. 1977).

*United States v. Agurs, supra*, defines those circumstances in which the prosecution's failure to provide exculpatory evidence to the defense may deprive the defendant of a trial comporting with due

process. The petitioner claims that the instant case should be distinguished from *Agurs* because, in contrast to *Agurs,* the undisclosed evidence in the case at bar is not cumulative of evidence presented at trial. We disagree. In *Agurs,* the determination that certain evidence was cumulative was made after applying a standard applicable to all claims of constitutional error resulting from undisclosed information which the defendant has requested in general terms or has not requested at all.

We also find no merit in the argument that the nondisclosure in Moore's case should fall within the first or second categories delineated in *Agurs.* The first category concerns perjured testimony which is part of the prosecution's case and is not disclosed to the defense. 427 U.S. at 103–4, 96 S.Ct. 2392. It is obvious that the case at bar does not involve the prosecution's use of perjured testimony.

█ The second category applied when the defense has made a request for specific exculpatory evidence which the prosecution fails to disclose. At oral argument, the petitioner's counsel asserted that a specific request had been made in this case. The record discloses that the defense requested written statements in the possession of the prosecution, the Lansing police chief, or the Chicago superintendent of police taken from any witnesses subsequent to the murder. Like the demand for "all probation reports, presentence interviews and reports for 14 individuals" in *United States v. Lasky,* 548 F.2d 835, 839 (9th Cir. 1977). Moore's demand was not specific in our opinion. Instead, it was a request for exculpatory material which should be scrutinized in accordance with the reasonable doubt standard set forth in *Agurs.*

Therefore, we find that the district court was correct in applying the following standard:

".   .   . if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *United States v. Agurs, supra,* at 112–113, 96 S.Ct. at 2402.

Here the district court determined that the undisclosed items did not create a reasonable doubt of the petitioner's guilt "when evaluated in the light of the entire record." In addition, the court declared that Sanders would probably not testify at a new trial and that the remaining evidence did not conjure up a reasonable doubt about Moore's guilt.

█ *Agurs* contemplates that the undisclosed evidence will be used at a new trial; it also requires the court to decide whether consideration of the omitted evidence, in the context of the entire record, creates a reasonable doubt of guilt. We believe that the decision below evidences such a determination and that Judge McMillen's conclusion not only was not clearly erroneous, it was entirely reasonable.

Moore himself has observed that "[t]he cumulative effect of the suppression of those five items was the erroneous identification of petitioner Moore by Sanders." As the district court noted, Sanders was not an eyewitness and was not present when the offense was committed. Considering the entire record in conjunction with Sander's testimony that he conversed with "Slick," not Moore, at the Ponderosa Tap, and even assuming the credibility of such testimony, we conclude that the district court correctly determined that a reasonable doubt of Moore's guilt does not result.

Accordingly, the district court's ruling denying the petition for a writ of habeas corpus is affirmed.

Affirmed.