THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM GRISWOLD, Defendant-Appellant.

Third District   No. 76-431

Opinion filed November 7, 1977.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendant William Griswold appeals from his conviction by a jury for armed robbery for which he was sentenced to not less than 15 years nor more than 30 years imprisonment.

According to the evidence introduced at trial, Police Sergeant Robert Keckler of the Bartonville Police Department was on patrol the night of December 23, 1975, when, because of a headache, he decided to buy some aspirin at Oakford's Super Value Store. As he started to turn into the parking lot adjoining the store, his way was blocked by a tan Ford automobile. He stopped and honked his horn until the car backed out of his way. For about 30 seconds, he viewed the driver of the tan car in the light of his headlights. Sergeant Keckler parked the squad car and walked toward the tan car on his way into the store. He observed the driver from the side for 20 or 30 seconds by the outdoor lights of the store, and he noticed the driver duck his head. The policeman went on into the store where Clark Eggers was in the process of robbing the store manager at gunpoint. When Eggers left the store with the manager, Sergeant Keckler ran outside after them. He saw Eggers get into the tan car, and he ordered the men to stop. As the car sped away, Sergeant Keckler fired a shot, and then pursued the robbers in his squad car. During the chase, Sergeant

Keckler radioed for additional help and dodged at least four shots from the fleeing bandits.

After traveling about one-half mile, the robbers turned into a dead-end street, and their car crashed into a house. Sergeant Keckler saw the driver jump from the car and flee on foot into a wooded ravine. Sergeant Keckler arrested Eggers, recovered the money taken from the store, and then directed the unsuccessful manhunt for the missing driver. After his arrest, Eggers told the police officers that defendant was the driver.

When Sergeant Keckler returned to the police station about two hours after the robbery, another officer showed him a single photograph of defendant which Sergeant Keckler identified as the driver of the get-away car. Defendant was arrested two weeks later. After arrangements for a lineup were made and then cancelled because defense counsel was unavailable, Sergeant Keckler selected a more recent picture of defendant from a group of 10 photographs.

Defendant's first trial ended in a mistrial when the jury was unable to agree on a verdict. During that trial, defendant's motion to exclude Sergeant Keckler's identification testimony was denied. The State called Eggers who testified that defendant did not drive the getaway car but rather someone named "Joe" was the driver. The court rejected the prosecution's claim that Eggers' testimony was unexpected.

Upon retrial, defendant renewed the motion to exclude Sergeant Keckler's identification. At a pretrial hearing on the motion, Sergeant Keckler testified that he could identify defendant on the basis of his three observations of the driver on the night of the crime, and the motion to exclude was again denied.

At trial Sergeant Keckler testified as to the lighting, his observations of the driver, and the photographic identification. After identifying defendant in the courtroom, Sergeant Keckler stated that he had known defendant as a boy when he attended grade school and high school with defendant's brother. His testimony as to what occurred in the parking lot was corroborated by two disinterested eyewitnesses. The store manager also testified for the State, but Eggers was not called by the prosecution in this trial. Defendant presented no evidence. The jury returned a verdict of guilty, and defendant was sentenced to 15-30 years in the penitentiary. Defendant appeals from that conviction.

## 1. IDENTIFICATION

■■ Defendant first contends that Sergeant Keckler's in-court identification was inadmissible because of his unnecessarily suggestive view of a single photo on the night of the robbery. As a general rule Illinois courts have held the in-court identification to be admissible if it was based on an origin sufficiently independent of the photographic

identification so as not to give rise to a very substantial likelihood of misidentification. (*People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819; *People v. Shelton* (3d Dist. 1975), 33 Ill. App. 3d 871, 338 N.E.2d 585.) The Supreme Court of the United States has recently rejected a *per se* rule of exclusion of identification evidence following unnecessarily suggestive confrontation procedures. In *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253, the court stated:

> "We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony * * *. The factors to be considered are set out in *Biggers*. 409 U.S., at 199-200, 93 S. Ct., at 382. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself."

■■ Applying these factors to the case at bar, we find that Sergeant Keckler had ample opportunity to observe defendant for a total of about one minute in the parking lot under good lighting conditions. (See *People v. Hahn* (4th Dist. 1976), 39 Ill. App. 3d 969, 350 N.E.2d 839, where two seconds was sufficient.) Furthermore, as an on-duty policeman, Sergeant Keckler had every reason to give defendant his close attention when he found his way obstructed into the parking lot at 11:30 p.m. Keckler was not a casual or passing observer. Certainly at the end of the chase, the pursuing officer would be attentive to the driver fleeing on foot, and his description of him as a "big man" was accurate for a man six feet tall and weighing 200 pounds. (Compare with *People v. Sanders* (1st Dist. 1976), 38 Ill. App. 3d 473, 348 N.E.2d 229.) Sergeant Keckler indicated absolute certainty as to defendant's identity at both trials and during the hearing on the motion to exclude. The first photographic identification occurred about two hours after the crime when the police were trying to confirm Eggers' statement that defendant was his accomplice. Considering all the circumstances of this case, we find that Sergeant Keckler's testimony was of sufficient reliability to outweigh the corrupting effect of the suggestive identification itself, and we also find that his in-court identification was of sufficiently independent origin to be admissible. It would be difficult for us to say that under all the circumstances of this case there is "a very substantial likelihood of irreparable misidentification." (*Simmons v. United States* (1968), 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253, 88 S. Ct. 967, 971.) We are satisfied to rely upon the good sense and judgment of a jury, for evidence with some factor of unsureness is chronic grist for the jury mill.

■■ After Sergeant Keckler's in-court identification of defendant, he testified that he had known defendant many years ago when attending school with defendant's brother. Defendant argues that evidence received after the in-court identification cannot be used to support the trial court's pretrial ruling on the motion to suppress, and we agree. (*People v. Braden* (1966), 34 Ill. 2d 516, 216 N.E.2d 808.) As our discussion above indicates, we believe the evidence is sufficient to sustain the court's ruling without consideration of any boyhood acquaintance between the witness and defendant. Defendant also cites *United States v. Mann* (5th Cir. 1977), 557 F.2d 1211, which involved an identification issue but which is inapplicable here because of the many distinguishing facts.

## 2. CREDIBILITY

■■ Defendant next contends that Sergeant Keckler's testimony, which was the only evidence placing defendant at the scene, was too incredible to sustain the conviction. This argument overlooks a most elemental proposition of law: a reviewing court will not substitute its judgment for that of the jury on questions involving the weight of the evidence or the credibility of witnesses, and will not reverse a conviction unless the evidence is so improbable as to raise a reasonable doubt of defendant's guilt. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) We find Sergeant Keckler's testimony to be credible, and we cannot say that it leaves a reasonable doubt as to defendant's guilt.

## 3. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant's third contention is that he was inadequately represented because of trial counsel's failure to make certain points at trial. As was stated in *People v. Newell* (1971), 48 Ill. 2d 382, 387, 268 N.E.2d 17, 19:

"[A] conclusion of inadequate representation can be reached only by demonstrating actual incompetence of counsel and a showing of substantial prejudice. Matters going to the exercise of judgment and discretion and trial tactics are insufficient to establish the incompetence of counsel." Accord, *People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3.

■■ The first error claimed was defense counsel's failure to object to the use of a photographic showup instead of a corporal lineup after defendant was in custody. Defendant relies upon *People v. Williams*, (1975), 60 Ill. 2d 1, 322 N.E.2d 819, where it was held that photographic identification procedures should not be used when the suspect is in custody and a lineup is otherwise feasible unless extenuating circumstances justify the use of photographic identification. According to police reports in the record, the Bartonville police twice scheduled lineups to permit Sergeant Keckler to identify defendant, and both times

the lineup was cancelled because of defense counsel's unavailability. Thus, defense counsel may have chosen not to object to the use of a photographic array because he knew only too well why a lineup was not feasible. Such a decision was an exercise of discretion.

■■ Defendant next claims that his counsel erred in failing to cross-examine Sergeant Keckler on three matters: (1) his grand jury testimony that he was not positive that defendant was the driver of the car; (2) his failure to mention during the first trial his second view of defendant in parking lot; (3) a police report saying that he showed defendant's picture to the owner of the getaway car three days after the robbery which contradicted his testimony that the only time he saw the photograph was the night of the robbery. We have examined the record as to each point, and we conclude that these matters involved trial strategy and not incompetence. As to the grand jury testimony, defense counsel did in fact question Sergeant Keckler about that on recross-examination, so no prejudice is shown. Sergeant Keckler's testimony at the second trial was fully consistent with the account he gave at the first trial. Finally, had defense counsel questioned Sergeant Keckler about his conversation with the owner of the getaway car, he would have opened up a line of inquiry that would have revealed that the owner had loaned the car to defendant. Thus, the record does not support defendant's claim of ineffective assistance of counsel.

## 4. JURY INSTRUCTION

■■ Defendant offered a non-Illinois Pattern Jury Instruction on identification. The trial court refused the instruction, and on appeal, defendant argues that the danger of misidentification inherent in eyewitness testimony justifies the use of a special identification instruction. This argument has been rejected by Illinois courts, and instead IPI Criminal 1.02 and 2.03 on credibility and burden of proof, respectively, have been held sufficient to instruct the jury as to the defense of mistaken identity. (*People v. Fox* (1971), 48 Ill. 2d 239, 269 N.E.2d 720; *People v. Attaway* (1st Dist. 1976), 41 Ill. App. 3d 837, 354 N.E.2d 448.) Furthermore, the instruction tendered does not conform to the evidence because Sergeant Keckler testified that he saw defendant three times the night of the robbery while defendant's instruction refers to a single sighting. The trial court correctly refused defendant's identification instruction.

The judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.