THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM GRISWOLD, Defendant-Appellant.

Third District   No. 79-331

Opinion filed October 21, 1980.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin, Martin N. Ashley, and Nicholas B. Svalina, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, William Griswold, was charged with armed robbery on December 24, 1975, and was tried by jury on March 23 and 24, 1976. Because the jury could not reach a verdict, a mistrial was declared, and the defendant was tried a second time by jury on April 26 and 28, 1976. At this trial the defendant was convicted and received a sentence of 15 to 30 years' imprisonment.

The defendant's conviction was affirmed by this court in *People v. Griswold* (1977), 54 Ill. App. 3d 246, 369 N.E.2d 392, *appeal denied* (1978), 71 Ill. 2d 611. Because the facts pertaining to the defendant's conviction and sentence were amply set forth in our earlier opinion, we will include here only those facts relevant to the defendant's efforts to seek post-conviction relief.

Following his unsuccessful appeal, the defendant filed a document entitled "Petition for Relief under Illinois Revised Statutes, Chapter 110, Section 72, or alternatively Post-Conviction Relief" in the trial court on February 2, 1978. In his petition, the defendant raised various grounds for relief pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72) or to section 122—1 *et seq.* of the Post-Conviction Hearing Act (Ill. Rev. Stat. 1979, ch. 38, par. 122—1 *et seq.*). The first ground alleged was that the identification of the defendant at trial by Officer Robert Keckler was the tainted product of an unnecessarily suggestive pretrial identification procedure. Keckler had identified the defendant as the driver of the getaway car in an armed robbery actually committed by one Clark Eggers. In the petition, after disputing Keckler's identification, the defendant made the following series of allegations:

"7. That only after his incarceration did Petitioner acquire knowledge of the true identity of the driver of the car, one Robert Powell, also presently incarcerated at Menard Correctional Center; that Robert Powell now admits to being the driver of the car (See attached Affidavit).

8. That Clark Eggers, who committed the armed robbery of the Oakford SuperValue, also admits that Robert Powell was the driver of the car on that night, and that he did not previously implicate Powell because he did not want Powell's parole to be revoked (See attached Affidavit and Appendix A). Further, that Eggers refused to implicate Petitioner despite repeated offers of significant sentence reduction by the Peoria County State's Attorney.

9. That the knowledge of Powell's part as the driver of the car was known to neither Petitioner nor his counsel at the time of his trials, nor could it become so known through the exercise of due diligence; that such facts became known to Petitioner only after his arrival at Menard Correctional Center, where he came into contact with Eggers and Powell."

The defendant then made various allegations of incompetent representation against his trial attorney as additional grounds for relief. The defendant concluded by arguing that the combination of the weak identification by Keckler with the newly-discovered evidence from the affidavits of Eggers and Powell gave rise to a reasonable doubt of his guilt so that the State failed to meet its burden of proof. The defendant prayed that his conviction be reversed.

Appended to the petition were the affidavits of Powell, Eggers and the defendant. Powell stated that he met Eggers around 11 p.m. on December 23, 1975, the night of the offense, and drove a tan 1964 Ford to the store which Eggers entered and robbed. Powell indicated that a police car had entered the parking lot of the store while Eggers was inside, but that the officer did not get a good look at Powell in the car. Powell did not know that the car had been loaned to the defendant earlier on December 23 or that the defendant had been convicted for driving the car, until the defendant and Powell met at the Menard Correctional Center. Powell was free on parole for a prior offense on December 23, 1975.

Eggers' affidavit stated that Eggers had met the defendant at a tavern on the afternoon of December 23, 1975. Eggers took the 1964 tan Ford which the defendant was using on that date without the defendant's knowledge, the car being one which Eggers had used before. Eggers met Powell at another bar and then committed the offense around 11 p.m. with Powell as the driver. Eggers stated that the defendant had no prior knowledge of the robbery and did not drive the getaway car. Eggers had not referred to Powell earlier because Eggers did not want Powell's parole to be revoked. Eggers noted that he had refused to implicate the defendant at defendant's first trial as he referred to the driver only as "Joe."

"Eggers' testimony at the first trial was in accord with the affidavit concerning how Eggers obtained the car and the role of 'Joe'. Also, appended to the petition and presented earlier at the hearing on defendant's motion for a new trial, was a portion of a letter from Eggers to the defendant's ex-wife in which Eggers asserted that the defendant did not participate in the offense but explained that he could not come forward sooner because 'Joe' was on parole."

Eggers was convicted and sentenced for the armed robbery.

The defendant's own affidavit corroborated the meeting with Eggers

at the tavern on December 23, 1975, and the subsequent disappearance of the car. The defendant assumed that Eggers, who knew the owner of the car, had taken it. The defendant denied any knowledge of why Eggers took the car and denied his participation in the offense.

Following the appointment of counsel to represent him in post-conviction proceedings, the defendant filed an amended petition raising as a further ground for relief the allegation that the testimony of Keckler was perjured and that the State knowingly used the allegedly perjured testimony. Subsequently, the defendant filed a motion for default judgment based on the failure of the State to answer the petition as amended, and the State responded by filing a motion to dismiss.

On February 28, 1979, a hearing was held on the motions filed by each party. The trial court considered the pleadings submitted by the parties, the records in the case and the opinion of this court handed down in the defendant's direct appeal, and, on March 1, 1979, granted the State's motion to dismiss as amended.

It is only the ruling of the trial court with respect to the allegations in the defendant's petition about Powell which the defendant now contests. He acknowledges the correctness of the trial court's ruling that the allegations regarding Powell failed to raise an issue of constitutional magnitude and thus are not cognizable under the Post-Conviction Hearing Act, but he asserts that newly discovered evidence, in this case of Powell's alleged participation in the crime, can be the basis for relief in a criminal case under section 72 of the Civil Practice Act. We disagree.

Section 72 of the Civil Practice Act, which reads as follows, provides for post-conviction relief, both legal and equitable:

> "Relief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section. Writs of error coram nobis and coram vobis, writs of audita querela, bills of review and bills in the nature of bills of review are abolished. All relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered. There shall be no distinction between actions and other proceedings, statutory or otherwise, as to availability of relief, grounds for relief or the relief obtainable." Ill. Rev. Stat. 1979, ch. 110, par. 72(1).

The leading case interpreting section 72 as incorporating the common law writ of error *coram nobis*, which was designed to correct errors occurring in a trial which would not have been committed had the trial court been in possession of certain facts unknown to it at trial, is *People v.*

*Touhy* (1947), 397 Ill. 19, 72 Ill. 2d 827, *cert. denied* (1947), 332 U.S. 791, 92 L. Ed. 372, 68 S. Ct. 99. In *Touhy*, the Illinois Supreme Court stated that a section 72 motion would not lie on the basis of newly discovered evidence or on allegedly false testimony.

The defendant contends that the *Touhy* decision, as it pertains to the question of newly discovered evidence, is of questionable validity, because that case was decided prior to a major revision of section 72 in 1955, a revision which brought subsection 1 of the statute to the pertinent form for this case. The 1955 revision brought several equitable remedies under the scope of section 72 and made legal and equitable relief available.

In support of his contention, the defendant relies on the civil case of *Ellman v. De Ruiter* (1952), 412 Ill. 285, 106 N.E.2d 350. The defendant's reliance on *Ellman* is misplaced. Although it is true that the 1955 revision to section 72 codified the *Ellman* decision, that revision does not broaden the grounds for a section 72 petition to include newly discovered evidence. The *Ellman* case stands for the proposition that fraud or excusable mistake, specifically the failure to inform a defendant of default judgments entered against him, is sufficient to support a motion to vacate judgment under section 72. 412 Ill. 285, 290-93, 106 N.E.2d 350, 350-53.

The weight of authority subsequent to the 1955 amendment of section 72 has continued to hold, as did *Touhy*, that newly discovered evidence in both civil and criminal cases does not provide a basis for section 72 relief. (*Schuman v. Department of Revenue* (1967), 38 Ill. 2d 571, 232 N.E.2d 732; *People v. Hammers* (1977), 48 Ill. App. 3d 1023, 363 N.E.2d 914; *People v. Heidelberg* (1975), 33 Ill. App. 3d 574, 338 N.E.2d 56; *People v. Custer* (1975), 25 Ill. App. 3d 24, 322 N.E.2d 551; *People v. Freeman* (1974), 26 Ill. App. 3d 443, 326 N.E.2d 207, citing *Touhy*; *Williams v. People* (1964), 31 Ill. 2d 516, 202 N.E.2d 468, and *People v. Colletti* (1971), 48 Ill. 2d 135, 268 N.E.2d 397.) In *Heidelberg*, a case factually similar to the case at bar, this court affirmed the circuit court's dismissal of the defendant's petition under section 72 where the defendant was positively identified at trial and presented affidavits which included a confession from another not presented at trial. We noted in *Heidelberg* that the facts presented in the affidavits were known to the defendant at the time of trial. (33 Ill. App. 3d 574, 583, 338 N.E.2d 56, 64.) In the case at bar the testimony of Clark Eggers, who testified at the defendant's original trial, was available at the defendant's retrial but was not presented. Instead an affidavit prepared by Eggers and containing facts known to him at trial was submitted by the defendant as a part of his section 72 petition. In like manner the defendant elected not to testify at his retrial yet after his conviction offered an affidavit proclaiming his

innocence. The only "new" evidence presented in the defendant's section 72 petition was that provided by Robert Powell, who claimed that he was the driver of the getaway car. But, given the positive identification of State's witness, Officer Robert Keckler, a credible witness who had ample opportunity to observe the defendant, the alleged confession of Powell would not have prevented the defendant's conviction. See *People v. Griswold* (1977), 54 Ill. App. 3d 246, 369 N.E.2d 392; *People v. Heidelberg* (1975), 33 Ill. App. 3d 574, 338 N.E.2d 56.

The defendant also questions the continued validity of the *Touhy* decision by suggesting that the court's holding in *Touhy* that a section 72 petition would not lie to determine an adjudicated factual question even though the adjudication was based on false or perjurious testimony has been implicitly overruled in subsequent cases. (See *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649; *People v. Jennings* (1971), 48 Ill. 2d 295, 369 N.E.2d 474; *People v. Lewis* (1961), 22 Ill. 2d 68, 174 N.E.2d 197, *cert. denied* (1961), 368 U.S. 876, 7 L. Ed. 2d 77, 82 S. Ct. 124.) The defendant argues that because *Touhy* has been implicitly overruled on the question of whether a section 72 petition can lie due to false or perjurious testimony, it should likewise no longer be controlling on the question of whether newly discovered evidence can serve as the basis for a section 72 petition.

Without addressing the specific question raised by the defendant concerning the validity of *Touhy* regarding the use of false or perjurious testimony as the basis for a section 72 petition, we note that each of the cases cited by the defendant in support of his argument was decided by our supreme court without consideration of *Touhy*. For that reason the defendant's attempts to discredit the *Touhy* decision, whether in relation to the use of new evidence or false testimony as the basis for a section 72 petition, are ill-fated.

■■ Because we hold that newly discovered evidence is not a proper basis for filing a section 72 petition, we need not discuss the defendant's contention that the trial court should have conducted a hearing and ruled on the merits of his petition.

Finally, the defendant contends that if relief does not lie under section 72 on the grounds of newly discovered evidence, there is no post-conviction remedy where a defendant, who is diligent and without fault, discovers new evidence that is strongly favorable to his position more than 30 days after his trial. In reply, the State, citing *People v. Freeman* (1974), 26 Ill. App. 3d 443, 326 N.E.2d 207, contends that State *habeas corpus* (Ill. Rev. Stat. 1979, ch. 65, par. 22) is available to the defendant. Disregarding the question of whether the defendant in the case at bar was diligent and without fault, we conclude that State *habeas corpus* is not available to him.

■■■ It is clear that State *habeas corpus* cannot be utilized to attack a judgment of conviction unless the court or judicial officer who entered judgment lacked jurisdiction. Even constitutional questions of a nonjurisdictional nature are not a proper subject matter for a *habeas corpus* petition. Ill. Rev. Stat. 1979, ch. 65, par. 22; *People ex rel. Haven v. Macieiski* (1967), 38 Ill. 2d 396, 231 N.E.2d 433; *People ex rel. Rose v. Randolph* (1965), 33 Ill. 2d 453, 211 N.E.2d 685.

We are cognizant of the fact that our decision leaves the defendant with no State statutory remedies. This result is consistent with the principle that litigation must end somewhere. Judicial fairness and justice do not always mean the existence of yet another statutory right.

For the reasons herein stated, the order of the Circuit Court of Peoria County is affirmed.

Judgment affirmed.

STOUDER and SCOTT, JJ., concur.