Dean A. PHEGLEY, Petitioner-Appellant,

v.

James GREER, Warden, and William J. Scott, Attorney General of the State of Illinois, Respondents-Appellees.

No. 81–1040.

United States Court of Appeals, Seventh Circuit.

Argued May 5, 1982.

Decided June 29, 1982.*

Opinion Oct. 19, 1982.

Certiorari Denied Oct. 18, 1982. See 103 S.Ct. 262.

Clinton A. Krislov, Mackelvie & Krislov, Chicago, Ill., for petitioner-appellant.

Michael V. Accettura, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before CUDAHY and ESCHBACH, Circuit Judges, and TEMPLAR,** Senior District Judge.

---

* This appeal was originally decided by an unpublished order dated June 29, 1982. See Circuit Rule 35. The court has subsequently decided to issue it as an opinion.

** The Honorable George Templar, Senior District Judge of the United States District Court for the District of Kansas, sitting by designation.

ESCHBACH, Circuit Judge.

Habeas corpus petitioner Phegley, an indigent Illinois state prisoner, was convicted of murdering the two-year-old son of a woman with whom he was living at the time of the alleged offense and was sentenced to 50 to 100 years in the penitentiary. Viewed in the light most favorable to the state, the evidence at his murder trial tended to show that the child had lapsed into a coma within a few days of being violently shaken by petitioner and that the child subsequently died as a result of intracranial bleeding associated with an acute subdural hematoma. After his conviction was affirmed in the Illinois appellate courts, petitioner applied for a writ of habeas corpus in the district court, relying on four distinct constitutional challenges to his criminal proceedings. The district court declined to issue the writ, but issued a certificate of probable cause for appeal. *Phegley v. Greer,* 497 F.Supp. 519 (C.D.Ill.1980). Although Phegley appeared *pro se* below, he is represented by court-appointed counsel on this appeal. The two issues raised on appeal, and commendably amplified in the briefs, are: (1) whether petitioner was unconstitutionally denied a free transcript of his preliminary hearing notwithstanding that the state did not observe a practice of recording such proceedings; and (2) whether he was denied a fair trial by the admission of assertedly unconstitutionally prejudicial evidence. We affirm.

## I

Phegley claims that he was entitled under principles of due process and equal protection to receive a free transcript of his preliminary hearing, which was held before an Associate Judge in Macon County, Illinois. At the time, Macon County did not provide for the recording of preliminary hearings before Associate Judges,[1] although preliminary hearings before Circuit Judges were recorded. His application to have the preliminary hearing recorded and transcribed, or, in the alternative, to transfer the proceeding to a Circuit Judge, was denied. At trial, the victim's mother gave detailed testimony concerning Phegley's abusive treatment of the victim, particularly with reference to the shaking incident. The mother had given a description of the same incident at Phegley's preliminary hearing. Phegley maintains that the state's failure to furnish him with a free transcript of the mother's preliminary hearing testimony precluded effective cross-examination at trial of the state's major witness. Phegley exhausted his state remedies as to the constitutionality of the failure to record his preliminary hearing and properly presented the issue in the district court.

The Supreme Court in *Roberts v. LaVallee,* 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) (per curiam), held, on equal protection grounds that an indigent defendant may not be denied a transcript of his preliminary hearing merely because he is unable to pay for it. Unlike Phegley's proceedings, however, the *Roberts* case arose in a context where the state made it a practice to record all preliminary hearings but would furnish a transcript only upon payment of a substantial fee. The short per curiam opinion in *Roberts* includes some rather expansive language regarding the rights of indigent criminal defendants: "Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution." 389 U.S. at 42, 88 S.Ct. at 196. More recent Supreme Court pronouncements in this area have adopted a more modest approach. *See, e.g., Ross v. Moffitt,* 417 U.S. 600, 612, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974) (analysis of equal protection rights of indigent defendants not a matter of absolutes but one of degrees). We are concerned here with the holding in *Roberts* and its underlying equal protection rationale, not with all possible ratiocinations of its dicta.

---

1. Petitioner concedes that Illinois law "did not and still does not require transcription of such proceedings . . . ."

For purposes of equal protection analysis, this case differs radically from *Roberts.* In *Roberts,* the state, by statute, refused to generate a free transcript from an *existing* record; defendants able to pay the required fee were furnished with an official transcript which could then be employed in cross-examining the state's witnesses. The hearing in Phegley's case simply went unrecorded. In this case, since no record was made in the first place, all defendants, rich and poor alike, were treated the same way. We recognize the possibility that some Macon County defendants may have been able to obtain *unofficial* transcripts of their preliminary hearings by hiring independent reporters to record and transcribe them. On the other side of the equal protection balance, we note that Phegley was represented by counsel at his preliminary hearing, and we are confident that, as lawyers generally do, his counsel took ample notes of the preliminary hearing testimony. Thus, even if we accept Phegley's hypothesis that some defendants had the resources to obtain unofficial transcripts, the relevant comparison is one between a class of indigents who had to rely on notes of counsel and a small hypothetical class of wealthy defendants who may have been able to acquire an unofficial transcript. From an equal protection perspective, Phegley's comparative disadvantage over the nonindigent defendant in Macon County is not one of constitutional dimension:

> [T]he fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required. The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant . . . , but only to assure the indigent defendant an adequate opportunity to present his claims fairly . . . .

*Ross v. Moffitt, supra,* 417 U.S. at 616, 94 S.Ct. at 2446. We therefore follow the First and Fourth Circuits in holding that the Equal Protection Clause does not require the states to record preliminary hearings as a predicate to the provision of a free transcript to indigent defendants. *See, e.g., Britt v. McKenney,* 529 F.2d 44 (1st Cir.), *cert. denied sub nom. Burden v. McKenney,* 429 U.S. 854, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); *Faison v. Zahradnick,* 563 F.2d 1135 (4th Cir. 1977), *cert. denied sub nom. Faison v. Mitchell,* 436 U.S. 908, 98 S.Ct. 2241, 56 L.Ed.2d 406 (1978).

Phegley also asserts a due process right to a free transcript of his preliminary hearing, relying on *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), in which the Supreme Court held that indigent defendants are entitled to court-appointed counsel at their preliminary hearings. The decision in *Coleman* is premised on at least four objectives that may be achieved by having an attorney present at the hearing:

> First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.

399 U.S. at 9, 90 S.Ct. at 2003. Phegley's due process theory touches only one of these considerations: the utility of preserving testimony for possible impeachment purposes. The other elements of effective assistance of counsel at a preliminary hearing, as discussed in *Coleman,* were satisfied in Phegley's case. Inasmuch as Phegley's counsel was free to take notes of the preliminary hearing testimony, even the element of preserving testimony for impeach-

ment purposes was at least partially satisfied. Due process does not always require the state to provide a full transcript to an indigent defendant if a partial transcript or appropriate substitute is made available. *Mayer v. City of Chicago,* 404 U.S. 189, 195, 92 S.Ct. 410, 415, 30 L.Ed.2d 372 (1971); *Draper v. Washington,* 372 U.S. 487, 495–96, 83 S.Ct. 774, 778–79, 9 L.Ed.2d 899 (1963). *Cf. United States ex rel. Grundset v. Franzen,* 675 F.2d 870, 875 (7th Cir. 1982) (verbatim transcript of guilty plea hearing not necessarily required by due process if effective substitute available). For the reasons discussed below, we are satisfied that for purposes of impeachment the presence of trial counsel at the preliminary hearing was a sufficient substitute for a full transcript under the facts of this case.

The state's evidence as to the event that caused the child's death did not turn on a lengthy or complicated narrative. The crucial evidence on this point was the mother's testimony regarding Phegley's shaking of the child. If her trial testimony on this event had departed significantly from her preliminary hearing testimony, then it is arguable that an official transcript might have served as the most effective impeachment tool, but this attribute of an official transcript would have come into play only if the mother's two descriptions of the event really were inconsistent. Given the importance of this testimony and the fact that it was simple and direct, Phegley and his trial counsel necessarily would have been alert to even the slightest inconsistency. Having heard the mother testify at the preliminary hearing, the defense counsel would not have needed an official transcript to detect inconsistencies. Yet there simply is no indication that the mother's two descriptions were inconsistent. Therefore, there is no basis for concluding that defense counsel's ability to cross-examine the state's major witness was hindered in any meaningful way by the lack of a preliminary hearing transcript. Drawing by analogy from the cases involving free transcripts for appel-

late review purposes, it may have been incumbent on the state in this case to show that a free official transcript was not required for effective cross-examination. *See Mayer v. City of Chicago, supra,* 404 U.S. at 195, 92 S.Ct. at 415. Although we express no view as to whether the state bore this burden of persuasion in the context of this case, we are satisfied that such a showing was made. Under the circumstances of this case, due process was not violated by the state's failure to have Phegley's preliminary hearing recorded and then transcribed.

Furthermore, in the absence of any hint of inconsistencies in the mother's testimony, we fail to see how Phegley was prejudiced by the lack of a preliminary hearing transcript. We note that the mother's trial testimony was corroborated in large part by another witness who related a statement Phegley had made over the telephone close to the time of the shaking incident. The error, if any, in failing to record the preliminary hearing in this case was harmless.

## II

■ Phegley also claims that unduly prejudicial evidence[2] was admitted at his trial. The claim of unduly prejudicial evidence was neither presented to nor addressed by the district court. In his reply brief, Phegley argues that this claim was inherent in his contention in the district court that the evidence was insufficient to support his conviction. Such an attempt to bootstrap his claim of inadmissible evidence cannot withstand even the most generous construction of the petition he filed in the district court. With respect to his challenge to the sufficiency of the evidence, his petition in the district court alleged as follows:

A. Ground one: THE EVIDENCE FAILED TO ESTABLISH MY GUILT OF THE OFFENSE OF MURDER AND SHOWS [ONLY] ENOUGH FOR INVOL[UNTARY] MANSLAUGHTER . . . .

The medical evidence showed . . . "probable" presence of a blood clot on

---

**2.** The claim of unduly prejudicial evidence pertains to testimony concerning other instances of abusive treatment of the victim by Phegley

and evidence that feces were found on the victim's person when medical attendants came to treat the child after he became unconscious.

the brain. The medical experts were of the opinion that the cause of death had occurred several days prior to the first time they saw the deceased. Both experts testified that the injury was not caused by any blow to the head but was consistent with jerking the child back and fro. The[ir] opinions were based only upon probabilities. My mental state at the time of the incident does not show the mental state required to establish the offense of murder and at most shows I acted recklessly. The evidence indicated that I showed disregard to a substantial and unjustifiable risk of great bodily harm to the deceased. The jury also found me guilty of involuntary manslaughter; aggravated battery; and endangering the life or health of a child.

(petitioner's citations to the record omitted). Manifestly, this argument is a challenge to the sufficiency of the evidence and contains not the faintest suggestion of inadmissible evidence. Claims of insufficient evidence and unduly prejudicial evidence involve entirely different legal standards and the latter is not even remotely implicit in the former. Since the inadmissible evidence claim was not raised in the district court and is not a matter that the district court was required to address *sua sponte,* it is not properly before this court and we therefore decline to consider it.[3]

### III

We affirm the order and judgment of the district court.

---

3. In *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Supreme Court held that the *district courts* must dismiss habeas petitions in toto if they contain any claims that have not been exhausted in the state courts. The district judge held that Phegley had exhausted all available remedies in the state courts as to the claims presented in the district court. Our review of the record indicates that Phegley satisfied the rule in *Rose v. Lundy* with respect to the petition he filed below. However, the separate claim of inadmissible, unduly prejudicial evidence was not included in Phegley's petition to the district court and is not properly before us for review.