William **GRISWOLD,**
**Petitioner-Appellant,**

v.

James **GREER,** Warden, Menard Correctional Center, and Tyrone **Fahner,** Attorney General, State of Illinois, Respondents-Appellees.

No. 82–1743.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1983.

Decided July 27, 1983.

John L. Stainthorp, Chicago, Ill., for petitioner-appellant.

Michael V. Accettura, Springfield, Ill., for respondents-appellees.

Before ESCHBACH and COFFEY, Circuit Judges, and NEAHER, Senior District Judge.*

COFFEY, Circuit Judge.

Petitioner-appellant William Griswold was tried before a jury in an Illinois state trial court and found guilty of armed robbery. The Illinois Appellate Court affirmed the conviction and the Supreme Court of Illinois denied Griswold leave to appeal.

After exhausting all available state post-conviction remedies, Griswold filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Illinois, East St. Louis Division. Both parties signed a written consent form permitting a United States Magistrate to hear the case and the magistrate subsequently denied Griswold's petition in an unpublished order. We affirm.

I.

Upon direct appeal of the petitioner's conviction the Illinois Appellate Court made the following findings of fact:

"According to the evidence introduced at trial, Police Sergeant Robert Keckler of the Bartonville Police Department was on patrol the night of December 23, 1975, when, because of a headache, he decided to buy some aspirin at Oakford's Super Value Store. As he started to turn into the parking lot adjoining the store, his way was blocked by a tan Ford automobile. He stopped and honked his horn until the car backed out of his way. For about 30 seconds, he viewed the driver of the tan car in the light of his headlights. Sgt. Keckler parked the squad car and walked toward the tan car on his way into the store. He observed the driver from the side for 20 or 30 seconds by the outdoor lights of the store, and he noticed the driver duck his head. The policeman went on into the store where Clark Eggers was in the process of robbing the store manager at gunpoint. When Eggers left the store with the manager, Sgt. Keckler ran outside after them. He saw Eggers get into the tan car, and he ordered the men to stop. As the car sped away, Sgt. Keckler fired a shot, and then pursued the robbers in his squad car. During the chase, Sgt. Keckler radioed for additional help and dodged at least four shots from the fleeing bandits.

After traveling about one-half mile, the robbers turned into a dead-end street,

* The Honorable Edward R. Neaher, Senior District Judge for the Eastern District of New York, is sitting by designation.

and their car crashed into a house. Sgt. Keckler saw the driver jump from the car and flee on foot into a wooded ravine. Sgt. Keckler arrested Eggers, recovered the money taken from the store and then directed the unsuccessful manhunt for the missing driver. After his arrest, Eggers told the police officers that defendant [Griswold] was the driver.

When Sgt. Keckler returned to the police station about two hours after the robbery, another officer showed him a single photograph of defendant which Sgt. Keckler identified as the driver of the get-away car. Defendant was arrested two weeks later. After arrangements for a lineup were made and then cancelled because defense counsel was unavailable, Sgt. Keckler selected a more recent picture of defendant from a group of ten photographs.

Defendant's first trial ended in a mistrial when the jury was unable to agree on a verdict. During the trial, defendant's motion to exclude Sgt. Keckler's identification testimony was denied. The State called Eggers who testified that defendant did not drive the get-away car but rather someone named 'Joe' was the driver. The court rejected the prosecution's claim that Eggers' testimony was unexpected.

\* \* \* \* \* \*

At trial Sgt. Keckler testified as to the lighting, his observations of the driver, and the photographic identification. After identifying defendant in the courtroom, Sgt. Keckler stated that he had known defendant as a boy when he attended grade school and high school with defendant's brother. His testimony as to what occurred in the parking lot was corroborated by two disinterested eyewitnesses. The store manager also testified for the State, but Eggers was not called by the prosecution in this trial. Defendant presented no evidence. The jury returned a verdict of guilty, and defendant was sentenced to 15–30 years in the penitentiary."

*People v. Griswold,* 54 Ill.App.3d 246, 11 Ill.Dec. 938, 939–40, 369 N.E.2d 392, 393–94 (1977).

After exhausting his direct appeals, the petitioner filed a state petition for post-conviction relief in the trial court. The document filed was entitled, "Petition for Relief under Illinois Revised Statutes, Chapter 110, Section 72, or alternatively Post-Conviction Relief." In his petition, Griswold alleged *inter alia* that Sgt. Keckler's identification of the petitioner was the tainted product of an unnecessarily suggestive pretrial identification procedure. Griswold also contended that while he was imprisoned in Menard Correctional Center, he learned, for the first time, that one Robert Powell, also a prisoner at Menard, was in fact Eggers' partner in crime as the driver of the getaway car involved in the armed robbery in question. The Illinois Appellate Court affirmed the trial court's denial of the petitioner's post-conviction petition. *People v. Griswold,* 89 Ill.App.3d 661, 44 Ill.Dec. 858, 411 N.E.2d 1224 (1980). The Supreme Court of Illinois thereafter denied his petition for leave to appeal from the appellate court's order of affirmance.

■ On March 25, 1981, the petitioner filed a federal habeas corpus petition alleging: (1) That his "conviction [was] obtained by the admission of impermissibly tainted identification"; (2) That "he was deprived of effective assistance of Court-Appointed Counsel"; (3) That "the Trial Court refused to hear evidence exculpitating [sic] petitioner because it was untimely"; and (4) That "the State Court denied petitioner his right to Appeal." The magistrate denied Griswold's habeas corpus petition after oral argument, concluding that the Illinois Appellate Court had found that Officer Keckler's testimony was sufficiently independent in origin and reliable to "outweigh the corrupting effect of the suggestive identification itself." The reliability of the photographic identification evidence was thus a factual determination, according to the magistrate, and since the subject had previously been fully considered by both the trial court and the appellate court, the determi-

nation of reliability must be presumed correct under the doctrine outlined in the United States Supreme Court decision of *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("*Sumner I*").

The magistrate also held that interpretation of state statutory law is not a proper function for the federal courts in their exercise of habeas corpus jurisdiction. The magistrate went on to state that the Illinois Appellate Court had fully considered the petitioner's claim of newly discovered evidence in its denial of the appeal of his post-conviction petition. The appellate court reviewed Griswold's claim in light of an earlier Illinois Supreme Court pronouncement that the post-conviction statutory section does not provide a vehicle "to determine a question of fact which has been adjudicated, even though decided wrongly, nor for alleged false testimony at trial nor for newly discovered evidence." *People v. Touhy,* 397 Ill. 19, 25, 72 N.E.2d 827, *cert. denied,* 332 U.S. 791, 68 S.Ct. 99, 92 L.Ed. 372 (1947).

The magistrate further found that Griswold's claim that he was denied his "right to appeal" was without merit. The magistrate held that the Illinois Appellate Court, in denying Griswold's post-conviction petition, fully considered the state procedural law applicable to this type of motion, and their findings should not be disturbed by a federal court. For this holding the magistrate again relied on *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The magistrate also noted that the decision to grant an appeal from the Illinois Appellate Court to the Illinois Supreme Court is purely within the discretion of the Illinois Supreme Court, Rule 315(a), Illinois Supreme Court Rules, and is not subject to review in a habeas corpus proceeding.

### A.

The petitioner repeats the same argument to this court that he presented to the Illinois trial and appellate courts that the identification of Griswold by Sgt. Keckler was unreliable and was the product of impermissively suggestive procedure and its admission, thus, violated his constitutional rights. Griswold contends that when Sgt. Keckler was initially given the photograph of Griswold he "was told that that was the man [he] was looking for that night" and that the photograph was that of the man who had committed the robbery. According to the petitioner, Keckler looked at the photograph several times the night of the robbery and numerous times later during the investigation and any subsequent identification of Griswold as the driver of the get-away car was tainted by the suggestive nature of the officer's receipt of the initial photograph. We disagree with the petitioner and affirm the magistrate's determination that Griswold's identification was not constitutionally defective.

As the Supreme Court noted in *Manson v. Braithwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140, 97 S.Ct. at 2253 (1977), reliability is the "linchpin" in determining the admissibility of identification testimony, and it must be determined by an examination of the totality of all the facts and circumstances. *Manson,* 432 U.S. at 114, 97 S.Ct. at 2253. In the instant case the Illinois Appellate Court specifically considered Officer Keckler's opportunity to view the accomplice at the time of the robbery, the trained officer's degree of attentiveness at that time; the accuracy of the skilled officer's description, the level of certainty he displayed at both trials and during the hearings on the motions to exclude the identification testimony, and the short lapse of time between the crime and the first photographic identification. After a careful examination, the appellate court found that Officer Keckler's testimony was sufficiently reliable to "outweigh the corrupting effect of the suggestive identification itself," and also was sufficiently independent in origin to be admissible. After reviewing the record before him, the magistrate affirmed the state court's finding that Officer Keckler's identification of Griswold at trial was based upon his independent viewing and observation of the defendant at the time of the crime. The magistrate determined that Sgt. Keckler's identification of

Griswold at the lineup and in-court was separate, distinct and unrelated to the officer being shown Griswold's photo two hours after the robbery.

■ The magistrate entered his order herein shortly before the United States Supreme Court released its decision in *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (*"Sumner II"*), and, accordingly, he was without benefit of the Court's most recent pronouncement regarding federal habeas corpus review of state pretrial identification procedures. As noted by the Court in *Sumner II:*

> "[T]he ultimate question as to the constitutionality of the pretrial identification procedures used ... is a mixed question of law and fact that is not governed by section 2254. In deciding this question, the federal court may give different weight to the facts as found by the state court and may reach a different conclusion in light of the legal standard. But the questions of fact that underlie this ultimate conclusion *are* governed by the statutory presumption .... Thus, whether the witnesses ... had an opportunity to observe the crime or were too distracted; whether the witnesses gave a detailed, accurate description; and whether the witnesses were under pressure ... are all questions of fact as to which the statutory presumption applies."

*Sumner,* 455 U.S. at 597, 102 S.Ct. at 1306–07 (emphasis original). The best method to determine the constitutionality of Officer Keckler's identification of the petitioner as the driver of the getaway car is simply to follow the method of analysis outlined by the United States Supreme Court in *Manson.* The factors to be considered include:

(1) The opportunity of the witness to view the criminal at the time of the crime;

(2) The witness' degree of attention;

(3) The accuracy of his prior description of the criminal;

(4) The level of certainty demonstrated at the confrontation; and

(5) The time between the crime and the confrontation.

*Manson,* 432 U.S. at 114, 97 S.Ct. at 2253. These factors are to be weighed against the corrupting effect of the alleged suggestive identification itself. 432 U.S. at 114, 97 S.Ct. at 2253.

We now consider the facts of this case, as determined by the Illinois Appellate Court, and apply the *Manson* analysis.

(1) The opportunity to view. As determined by the state appellate court, "Sgt. Keckler had ample opportunity to observe [the petitioner] for a total of about one minute in the parking lot under good lighting conditions." *People v. Griswold,* 11 Ill. Dec. at 940, 369 N.E.2d at 394.

(2) The degree of attention. As the state appellate court observed: "[A]s an on-duty policeman, Sgt. Keckler had every reason to give [petitioner] his close attention when he found his way obstructed in the parking lot at 11:30 p.m. Keckler was not a casual or passing observer." Keckler observed the driver of the car duck his head while being passed by the uniformed officer. "Certainly at the end of the chase, the pursuing officer would be attentive to the driver fleeing on foot...." *Griswold,* 11 Ill.Dec. at 940, 369 N.E.2d at 394.

(3) The accuracy of the description. As noted by the appellate court, Keckler's description of the driver fleeing the getaway car as a "big man" was consistent with the petitioner's physical makeup;

(4) The witness' level of certainty. As the appellate court noted: "Sgt. Keckler indicated absolute certainty as to [the petitioner's] identity at both trials and during the hearing on the motion to exclude." 11 Ill.Dec. at 940–41, 369 N.E.2d at 394–95; and

(5) The time between the crime and the confrontation. In this case the photographic identification was made approximately two hours after the crime.

■ It is clear that the magistrate properly (1) applied the test enunciated by the Supreme Court in *Manson;* (2) applied the presumption of correctness to the factual

findings in this case in keeping with the Supreme Court's *Sumner I* decision; and (3) made the legal determination that the petitioner's constitutional rights were not violated with respect to Sgt. Keckler's in-court identification of Griswold.

#### B.

In the petitioner's appeal to this court, he does not challenge the magistrate's conclusion that Illinois law provides no state procedure for a petitioner to present newly discovered evidence more than 30 days after his trial. The petitioner also does not allege that the existence of new evidence entitled him to federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Griswold, however, does urge this court to adopt his argument that the absence of any state procedure whereby he can present new evidence is a violation of the Due Process Clause of the United States Constitution. We need not reach the merits of the petitioner's due process claim because we find that it is not properly before this court as it was not raised before nor addressed by the magistrate below.

> "It is a well-established general proposition that 'a litigant cannot present to this court as a ground for reversal an issue which was not presented to the trial court and which it, therefore, had no opportunity to decide.'"

*Holleman v. Duckworth,* 700 F.2d 391, 394 (7th Cir.1983) (*quoting Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1333 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977)); *Phegley v. Greer,* 691 F.2d 306, 309 (7th Cir.1982); *United States ex rel. Moore v. Brierton,* 560 F.2d 288, 291 (7th Cir.1977), *cert. denied,* 434 U.S. 1088, 98 S.Ct. 1285, 55 L.Ed.2d 794 (1978). The habeas corpus petition filed by Griswold with the district court did not contain any mention of a deprivation of any rights in violation of the Due Process Clause regarding the absence of any state procedure for presentation of newly discovered evidence. After a hearing, the magistrate issued his decision which contains no mention of any such claim. We are confi-

dent, based on our review of the record on appeal, that Griswold did not present this due process claim to the magistrate. Since the due process claim was not presented to the district court and was not a matter that the district court was required to address *sua sponte,* it is not properly before this court and we therefore decline to consider it.

#### II.

The order of the district court denying Griswold's petition for a writ of habeas corpus is hereby AFFIRMED.